**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Criminal No. 1:21-CR-00236-JDB** |
| **v.** ) | |
| ) | |
| **FEDERICO GUILLERMO KLEIN,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER AND OPPOSITION TO MOTION FOR EXCLUSION OF TIME

Pursuant to section 3145(b) of Title 18 of the United States Code, Mr. Klein, by and through the undersigned counsel, respectfully moves this Court for and Order revoking or amending the pretrial detention of Mr. Klein ordered by Magistrate Judge Zia M. Faruqui on March 9, 2021. *See* Order of Detention (March 16, 2021) (ECF No. 11).

Mr. Klein has been detained in this matter following a detention hearing requested by the government pursuant to section 3142(f)(1)(A) and (B) of title 18 of the United States Code. However, because the government has neither charged Mr. Klein with a "crime of violence" nor with a felony that involves the possession or use of a "dangerous weapon," the government was not entitled to seek the detention of Mr. Klein pending a trial in this matter. Moreover, even if the government was entitled to a detention hearing, the government has failed to prove, by clear and convincing evidence, that Mr. Klein poses a dangerous threat to his community. And even if the government has met its burden, it has nevertheless failed to demonstrate, again by clear and convincing evidence, that no condition, or combination of conditions, could reasonably assure the safety of the community. Finally, Mr. Klein opposes the government's request to toll any time under the Speedy Trial because of the "complex[ity] [of its] investigation" and submits, in

the alternative, that any such tolling, in conjunction with the government's insistence on pretrial detention, constitutes a violation of Mr. Klein's due process rights as guaranteed by the Fifth Amendment to the Constitution.

## I.    PROCEDURAL HISTORY

On March 2, 2021, Defendant Federico (a/k/a Freddie) Klein was charged by complaint with various offenses related to the allegation that he was present at the Capitol Building during the violence that occurred there on January 6, 2021.  Complaint (March 2, 2021) (ECF No. 1). On March 4, 2021, Mr. Klein was arrested and on March 5, 2021, he made his initial appearance before Magistrate Judge Zia M. Faruqui, who ordered temporary detention.  On March 9, 2021, a detention hearing was held at which Judge Faruqui ordered Mr. Klein detained pending a trial in this matter.  Order (March 16, 2021) (ECF No. 11).  On March 19, 2021, the government filed an indictment as against Mr. Klein charging him with eight (8) counts, again related to the allegation that he was present at the Capitol Building on January 6.  Indictment (March 19, 2021) (ECF No. 12).  On March 25, 2021, this Court held an arraignment at which Mr. Klein pleaded not guilty to each of the counts in the indictment.  Also on March 25, 2021, the government filed a motion to exclude time under the Speedy Trial Act based on the complexity of its investigation of the events of January 6.  Mot. Cont. (March 25, 2021) (ECF No. 15).  Given the inherent conflict between the government's insistence on Mr. Klein's detention pending trial and its concurrent request to delay any such trial and upon Mr. Klein's objection, this Court set a briefing schedule.

## II.    LEGAL STANDARD

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) ("The default position of the

law . . . is that a defendant should be released pending trial." (internal quotation marks and citation omitted)); *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) ("[F]ederal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. Only in rare circumstances should release be denied. Doubts regarding the propriety of release should be resolved in favor of the defendant." (internal citations omitted)).

The Bail Reform Act of 1984 authorizes one of those carefully limited exceptions. Relevant here, the government may seek a defendant's pretrial detention if it has charged an offense falling within one of five enumerated categories. *See* Mem. Op., *United States v. Chansley*, No. 21-cr-00003-RCL, at 8 (D.D.C. March 8, 2021) (quoting 18 U.S.C. § 3142(f)(1)). Assuming the court finds that the defendant has been charged with such an offense, the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

"The crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an *identified and articulable threat* to an individual or the community, . . . a court may disable the arrestee *from executing that threat*.'" *United States v. Munchel*, 2021 U.S. App. LEXIS 8810, at *13 (D.C. Cir. March 26, 2021) (emphasis added) (*quoting Salerno*, 481 U.S. at 751). "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at *19, and "a defendant's detention based on dangerousness accords with due process only insofar as the

district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at *13.

Then, only after the government has met its burden of proving a specific articulable threat to an individual or the community, the government must establish, again by clear and convincing evidence, "that *no* condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the *only* means by which the safety of the community can reasonably be assured. *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

Under 18 U.S.C. § 3145(b), a defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "a court having original jurisdiction over the offense." This court has previously held that a magistrate judge's detention order is subject to *de novo* review by the district court. *See United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C 2018).[1]

### III.   THE BAIL REFORM ACT DOES NOT AUTHORIZE MR. KLEIN'S PRETRIAL DETENTION.

Because the government has neither charged Mr. Klein with a "crime of violence" nor with a felony that involves the possession or use of a "dangerous weapon," the government is not entitled to seek the detention of Mr. Klein pending a trial in this matter. Moreover, even if the government was entitled to a detention hearing, the government has failed to prove, by clear and

---

[1] Although the Circuit Court for the District of Columbia has not expressly ruled on this issue, it has acknowledged in dictum, in a case arising under the predecessor Bail Reform Act that district courts review such prior determinations with "broad discretion." *Wood v. United States*, 391 F.2d 981, 984 (D.C. Cir. 1981).

convincing evidence, that Mr. Klein poses a dangerous threat to his community.  And even if the government has met its burden, it has nevertheless failed to demonstrate, again by clear and convincing evidence, that no condition, or combination of conditions, could reasonably assure the safety of the community.

### A.  The Charged Offenses Do Not Authorize Mr. Klein's Detention.

At the outset, pretrial detention is only available in a limited subset of cases involving "the most serious" of offenses.  *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (*quoting Salerno*, 481 U.S. at 739); *Singleton*, 182 F.3d at 14 (describing burglary as the "classic example of an offense evidencing such a direct relationship" – "[t]he risk of violence in a burglary is not merely temporally coincident with the offense, but arises from the actions of the burglar in committing the crime itself, and the likely consequences that would ensue upon intervention of another person").

Thus, as a threshold determination, this Court must first find that the government is entitled to a detention hearing (let alone detention).  *See* 18 U.S.C. § 3142(f).  Applicable here, the government seeks pretrial detention pursuant either to 18 U.S.C. § 3142(f)(1)(A), because Mr. Klein is accused of committing a "crime of violence," or 18 U.S.C. § 3142(f)(1)(E), because he is accused of committing a felony "that involves the possession or use . . . of a dangerous weapon."  Specifically, Mr. Klein has been indicted on eight (8) counts, of which 3 (three) are contended to be crimes of violence[2] and in just one has the grand jury alleged the use of a dangerous weapon.  Indictment (March 19, 2021) (ECF No. 12).

––––––––––––––––––––––––––––––

[2] In prior proceedings, the government has asserted that cases involving 18 U.S.C. § 231(a)(3) (Civil Disorder); § 1512(c)(2) (Obstruction of an Official Proceeding); § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); § 1752(a)(2) (Disorderly and Disruptive Conduct in Restricted Building or Grounds) are not "crime[s]

### i.  Mr. Klein Has Not Been Charged with a "Crime of Violence."

A "crime of violence" includes "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 3156(a)(4).[3]

"In determining whether an offense is a crime of violence, courts look to the elements of the offense, not the real world conduct."  *Singleton*, 182 F.3d at 11.  "The term of art 'element of the offense' makes clear that a court need look no further than the statute creating the offense to decide whether it describes a crime of violence."  *Id.* at 11; *see also Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016) (explaining that an "element" is something that the jury has to unanimously select or something the defendant must necessarily admit to be found guilty of the offense).  A statute cannot categorically be a "crime of violence" unless "the least of the acts criminalized" has as an element the "use, attempted use, or threatened use of physical force."  *Montcrieffe v. Holder*, 569 U.S. 184, 191 (2013); 18 U.S.C. § 3156(a)(4).

The principal of ejusdem generis is instructive in considering which offenses Congress intended to give rise to a detention hearing.  Specifically, "a general statutory term [is] understood in light of the specific terms that surround it."  *Hughey v. United States*, 495 U.S. 411, 419 (1990), *quoted in United States v. Watt*, 911 F.Supp. 538, 545 n.5 (D.C. Cir. 1995).  For

---

of violence" warranting a detention hearing.  *See* Opp. Mot. Pretrial Release, *United States v. Chansley*, No. 21-cr-3-RCL, at 2 n.2 (March 1, 2021).  Nor can § 5104(e)(2)(D) be seriously considered a "crime of violence."  That section requires, *inter alia*, only a finding that the accused "utter loud, threatening, or abusive language."
[3] Section 3156(a)(4) also defines a "crime of violence" as any felony listed under chapter 77, 109A, 110, or 117, however it is undisputed that Mr. Klein has not been charged with any such offense.

example, under section 3142(f)(1)(A), in addition to cases involving "crime[s] of violence," the government is entitled to a detention hearing where the defendant is charged with sex trafficking of children under 18 U.S.C. § 1591, or with a "Federal crime of terrorism" under 18 U.S.C. § 2332b(g)(5)(B).  In addition, the government is entitled to a detention hearing when the defendant is charged with an offense for which the maximum sentence is life imprisonment or death.  *See* 18 U.S.C. § 3142(f)(1)(B).  A review of the *elements* of the offenses with which Mr. Klein has been charged confirm that they are not among "the most serious" of offenses intended to captured by Congress with its passage of the Bail Reform Act.

Specifically, [t]he . . . question is whether the 'nature' of an offense . . . is such that a 'substantial risk' of violence arises 'in the course of committing the offense.'"  *United States v. Singleton*, 182 F.3d 7, 10 (D.C. Cir. 1999).  "Case-specific facts are thus relevant at a detention hearing, but not when considering the government's motion . . . to hold such a hearing."  *Id.* at 12.  "Absent a direct relationship between the offense and a risk of violence, the *possibility* of violence is not a basis for pretrial detention on a charge that on its face does not involve violence as an element."  *Id.* at 14.  "[A] more precise relationship between charged conduct and future risk is necessary to," *id.*, demonstrate that an offense "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 3156(a)(4)(B).[4]

---

[4] As the D.C. Circuit recognized in *Singleton*, the fact that a charged offense does not entitle the government to a detention hearing "does not deprive the government of an opportunity to detain [the accused] when other circumstances warrant."  182 F.3d at 16.  The Court goes on to note that the government can seek pretrial detention if the accused presents a flight risk or otherwise a risk "that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," 18 U.S.C. § 3142(f)(2), circumstances the government has not alleged here.

1.  <u>18 U.S.C. §111(a) is not a "Crime of Violence."</u>

Section 111(a)(1) of Title 18 of the United States Code provides that whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [designated federal officer[5]] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both."

To be convicted, a person must: "(1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer; (4) while engaged in or on the account of the performance of official duties." *United States. v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).  The adverb "forcibly" modifies all the prohibited acts in the second element— i.e., forcibly assault, forcibly resists, forcibly opposes, etc.  *See United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990).

There should be little dispute that this offense does not qualify as a crime of violence. None of its elements require the expenditure of violent physical force because, by its plain text, the offense can be committed merely through "resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]" with federal officers.

---

[5] Section 111(a) covers "any person designated in section 1114 of this title[.]"  Section 1114, in turn, applies to "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)[.]" 18 U.S.C. § 1114.

While "forcibly" modifies all the prohibited acts in the second element, courts have found that modifier is basically meaningless—"forcibly" does not actually require "any particular level of force." *See*, *e.g.*, *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014). "In fact, 'a defendant may be convicted of violating section 111 if he or she uses any force whatsoever." *Id.* (*quoting United States v. Sommersedt*, 752 F.2d 1494, 1496 (9th Cir. 1985)); *see also United States v. Cunningham*, 509 F.2d 961, 963 (D.C. Cir. 1975) (noting that "some measure of presently applied force is required"—"presumably. . . mere refusal to unlock a door through which federal agents sought entrance" would not be sufficient—but the question of how much force is required is "a troublesome question of degree"); *Burke v. United States*, 400 F.2d 866, 867-68 (5th Cir. 1968) (affirming jury instruction that an "assault may be committed without actually touching, striking, or committing bodily harm to another.").

Accordingly, a number of courts have upheld convictions pursuant to section 111(a) based on non-violent conduct. *See United States v. Stoddard*, 407 Fed. App'x 231, 233-34 (9th Cir. 2011) (spitting in correction officer's face); *United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000) (throwing cup of urine/feces mixture at officer); *United States v. Taliaferro*, 211 F.3d 412, 413, 415-16 (7th Cir. 2000) (throwing urine in guard's face); *United States v. Hightower*, 512 F.2d 60, 61 (5th Cir. 1975) (grabbing wildlife agent's jacket); *United States v. Frizzi*, 491 F.2d 1231, 1231-32 (1st Cir. 1974) (spitting in mail carrier's face); *United States v. Fernandez*, 837 F.2d 1031, 1033 (11th Cir. 1988) (chasing prosecutor down the street and bumping into him).

In *(Curtis) Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court interpreted the phrase "physical force" to require "violent force—that is, force capable of causing pain or injury to another person." *Id.* at 140 (emphasis in original). It also made clear that "offensive

touching" is insufficient to satisfy the physical force element. *See id.* at 139. Spitting on another or throwing urine in their face are paradigmatic examples of merely offensive touching that is incapable of causing physical injury. *See United States v. Jones*, 914 F.3d 893, 905-06 (4th Cir. 2019) (finding that "an attempt to touch another in a rude or angry manner, such as spitting at another," does not require violent physical force). Because of this, § 111(a) categorically fails to qualify as a crime of violence. *See Dominguez-Maroyoqui*, 748 F.3d at 921 (holding that § 111(a) is not a crime of violence under the almost identically worded force clause of U.S.S.G. § 2L1.2);[6] *cf. United States v. Bennett*, 863 F.3d 679, 681 (7th Cir. 2017) (Posner, J.) (holding Indiana's resisting law enforcement, which is virtually identical to § 111(a), does not satisfy the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i)).[7]

2. The Enhanced Penalty Provided by 18 U.S.C. §111(b) Does Not Make the Offense A "Crime of Violence."[8]

Neither does seeking the penalty enhancement provided by section 111(b) make the offense a "crime of violence." Specifically, section 111(b) provides for enhanced penalties if the person "in the commission of any acts described in subsection (a), uses a deadly or dangerous

---

[6] Under U.S.S.G. 2L1.2's elements clause, a "crime of violence" includes "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

[7] The Armed Career Criminal Act's elements clause includes any felony offense that "has an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i).

[8] Count Three of the indictment charges Mr. Klein with "Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18, United States Code, Sections 111(a)(1) and (b))." Indictment, at 3 (ECF No. 12). On its face, however, it's not clear that subjection (b) of section 111 is its own offense, as opposed to providing for an "enhanced penalty" as the title of the subjection provides. Had Congress intended the Bail Reform Act to provide for pretrial detention in cases where penalty enhancements apply, it could have so specified, but it did not. On this basis alone, Mr. Klein should not be subject to pretrial detention.

weapon . . . or inflicts bodily injury." 18 U.S.C. § 111(b) (1994). To be convicted, a person must (1) use a deadly or dangerous weapon or inflict bodily injury; (2) in the commission of the acts described in § 111(a). *See Arrington*, 309 F.3d at 44 & n.7 (interpreting the similarly worded but prior version of § 111(b)).[9]

As a preliminary matter, using a deadly or dangerous weapon or inflicting bodily injury are merely two alternate means of committing the enhanced offense; they are not separate elements. *See id.* at 44 n.7 (discussing how to satisfy the first element, "§111(b) sets forth an *alternative for this element*: the defendant must *either* use a deadly or dangerous weapon *or* inflict bodily injury" (emphasis added and internal brackets omitted)); *see also Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016) (explaining that an "element" is something that the jury has to unanimously select or something the defendant must necessarily admit to be found guilty of the offense; but "means" are the factual manner of satisfying an element that the jury does not have to unanimously find or the defendant does not have to necessarily admit). Or, to use the language of the modified categorical approach, § 111(b) is indivisible. *See Descamps v. United States*, 570 U.S. 254, 261 (2013). Therefore, the statute cannot categorically be a crime of violence unless "the least of the acts criminalized" of these two means has as an element the use, attempted use, or threatened use of violent force. *Montcrieffe*, 569 U.S. at 191. The "least of the acts criminalized" between the two means of using a deadly or dangerous weapon *or* inflicting

_____

[9] On April 24, 1996, the statute was amended to: "Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon *(including a weapon intended to cause death or danger but that fails to do so by reason of a defective component)* or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years or both." § 111(b) (1996) (emphasis on amended language)

bodily injury is likely inflicting bodily injury.  And "[a]bsent a direct relationship between the offense and a risk of violence, the possibility of violence is not a basis for pretrial detention on a charge that on its face does not involve violence as an element."  *Singleton*, 182 F.3d at 14 (describing burglary as the "classic example of an offense evidencing such a direct relationship" – "[t]he risk of violence in a burglary is not merely temporally coincident with the offense, but arises from the actions of the burglar in committing the crime itself, and the likely consequences that would ensue upon intervention of another person").

Committing an assault that inflicts bodily injury does not require the government to prove that the defendant used force against the person.  This is so because the mere fact that offense *results* in injury, is not the equivalent of the use of violent force.  Not to recognize the distinction between a *use* of force and a *result* of injury is not to recognize the "logical fallacy . . . that simply because all conduct involving a risk of the use of physical force also involves the risk of injury then the converse must also be true." *Dalton v. Ashcroft*, 257 F.3d 200, 207 (2d Cir. 2001); *see also cf. United States v. Williams*, 353 F. Supp. 3d 14, 21 (D.D.C. 2019) ("To be sure, involuntary manslaughter always results in death.  But offenses resulting in death do not necessarily require the use of violent force").

The Seventh Circuit's decision in *United States v. Bennett*, 863 F.3d 679 (7th Cir. 2017) is instructive.  There, Judge Posner analyzed Indiana's resisting law enforcement statute—which is virtually identical to § 111(b)—to determine whether it qualified as a violent felony under the Armed Criminal Career Act's elements clause.  For comparison, Indiana's resisting law enforcement statute is on the left side and § 111(b) is on the right:

| Indiana Code 35-44-3-3 "Resisting law enforcement" (recodified to 35-44.1-3-1) | 18 U.S.C. § 111(b) "Assaulting, resisting, or impeding certain officers or employees" |
|---|---|
| Whoever "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting while the officer is lawfully engaged in the execution of the officer's duties . . ." <br><br> and while doing so "draws or uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person…" is guilty of Indiana Code § 35-44-3-3(b)(2). | Whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [designated federal officer] while engaged in or on account of the performance of official duties . . ." <br><br> and while doing so "uses a deadly or dangerous weapon or inflicts bodily injury" is guilty of § 111(b). |

The issue before Seventh Circuit was whether Bennett's prior conviction for "inflicting bodily injury on or otherwise causing bodily injury to another person . . . in the course of committing an offense (resisting arrest)" qualified as a violent felony under the elements clause of the ACCA.[10]  *Bennett*, 863 F.3d at 681.  In reaching his determination, Judge Posner first observed that "inflicting bodily injury on or otherwise causing bodily injury to a person . . . need not connote violence."  *Id.*  For example, "a suspect who had 'put his arms underneath his body to prevent the deputies from handcuffing him' had inflicted bodily injury on the deputies because the deputies had injured their hands by hitting the suspect's forearms to bring his arms behind his back to handcuff him."  *Id.* (describing the conduct at issue in *Whaley v. State*, 843 N.E.2d 1, 5, 10–11 (Ind. App. 2006)).  He provided another example: "Suppose a person is

---

[10] The sole textual difference between the elements clause in the ACCA (relevant to *Bennett*) and the elements clause in § 924(c) (relevant here), is that the ACCA only includes force used against *a person*, whereas § 924(c) includes force used against *a person and property*.  *Compare* § 924(e)(2)(B)(i) (defining "violent felony" as a felony offense that "has an element the use, attempted use, or threatened use of physical force against the person of another"), *with* § 924(c)(3)(A) (defining a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person *or property of another*") (emphasis added).

handcuffed by a police officer, tugs in the hope of squeezing his hands through the cuffs, and accidentally causes the officer to trip and fall as a result of the tugs." *Id.* at 681.  In such a case, the "person's effort thereby to avoid arrest would be resisting law enforcement, but would not be considered violent or even threatening under 18 U.S.C. § 924(e)(2)(B)(i)." *Id.* at 681-82. Because of this, Judge Posner held that Indiana's resisting law enforcement statute was not a crime of violence.  *Id.* at 682.

The same rationale applies here – the enhancement provided by § 111(b) does not make the offense a "crime of violence."  Neither the use, attempted use, or threatened use of physical force against another is required by the statute.  Mr. Klein may not be detained pending trial based only on his potentially being subject to an enhanced penalty pursuant to section 111(b).

      3.   <u>Neither 40 U.S.C. § 5104(e)(2)(F) Nor 18 U.S.C. § 1752(a)(4)</u>
           <u>Constitute "Crimes of Violence."</u>

Section 5104(e)(2)(F) of Title 40 of the United States Code provides that an individual "may not willfully and knowingly . . . engage in an act of physical violence in the Grounds or any of the Capitol Buildings . . . ."  Similarly, section 1752(a)(4) of Title 18 of the United States Code precludes "knowingly engag[ing] in any act of physical violence against any person or property in any restricted building or grounds," including "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  "An act of physical violence" is defined by section 5104 as an "act involving – (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, destruction of, real or personal property."  40 U.S.C. § 5104(a)(1).

Once again, a statute cannot categorically be a "crime of violence" unless "the least of the acts criminalized" has as an element the "use, attempted use, or threatened use of physical force."  *Montcrieffe v. Holder*, 569 at 191; 18 U.S.C. § 3156(a)(4).  Thus, all a jury need find to

convict a defendant of an offense under section 5104(e)(2)(F), is an assault – and "inflicting bodily injury on or otherwise causing bodily injury to a person . . . need not connote violence," *Bennett*, 863 F.3d at 681 – *or* damage to real or personal property, which also need not connote violence. *See United States v. Bowen*, 936 F.3d 1091, 1107-08 (10th Cir. 2019) ("Although spray-painting another's car damages that person's property, we cannot conclude that the *mere* fact that it damages property means that it requires 'violent force,' or makes it a crime of violence . . . ." (*quoting (Curtis) Johnson*, 559 U.S. at 140)).

### ii.   A Police Riot Shield is Not an Inherently Dangerous Weapon.

The government also is not entitled to a detention hearing despite having charged Mr. Klein with a felony "that involves the possession or use of a . . . dangerous weapon."  18 U.S.C. § 3142(f)(1)(E).  Here, the government has charged Mr. Klein with using a riot shield to "forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer . . . of the United States" in violation of sections 111(a)(1) and (b) of title 18 of the United States Code. The Bail Reform Act does not define the term "dangerous weapon" and neither has this court or the D.C. Circuit.  Context can be gleaned however, from preceding language in the statute which provides for a detention hearing in a case that involves:  "any felony that is not otherwise a crime of violence . . . *that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921)*, or any other dangerous weapon . . . ."  18 U.S.C. § 3142(f)(E).

That the legislature did not define "dangerous weapon" despite the specificity within this section of the statute is noteworthy.  The legislature did, after all, specifically define "a firearm or destructive device" and therefore, the principal of ejusdem generis is once again instructive making it a reasonable inference that subsection (E) was intended to provide the government a

detention hearing for defendants accused of non-violent crimes involving firearm-like weapons.[11]

The government has not alleged that Mr. Klein committed any offense, let alone a felony, involving the possession of a "dangerous weapon" and therefore he may not be detained pending trial pursuant to section 3142(f)(1)(E).

### B.  The Government Has Failed to Establish Any Articulable Threat Posed by Mr. Klein to an Individual or the Community.

Even if the government is entitled to a detention hearing, it has failed to prove, by clear and convincing evidence, that Mr. Klein poses an articulable threat to an individual or the community.  The crux of the constitutional justification for preventative detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat."  *Munchel*, 2021 U.S. App. LEXIS 8810, at *16 (*quoting Salerno*, 481 U.S. at 751).  "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at 16-17, and "a defendant's detention based on dangerousness accords with due

---

[11] It is true that for purposes of determining a violation of section 111(b), this court and others have consistently defined "dangerous weapon" as "an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict bodily harm."  *See* Mem. Op., *United States v. Chansley*, No. 21-cr-00003-RCL, at 13-14 (March, 8, 2021).  The cases cited by Judge Lamberth, however, are readily distinguishable in that they were not addressing the definition of a "dangerous weapon" for purposes of determining whether the government was entitled to a detention hearing.  The legislature could have, but did not, define "dangerous weapon" consistent with other criminal statutes to use the phrase.  Even if it had, nothing about a riot shield is inherently dangerous.  Just the opposite, by definition a shield is "something that . . . protects or defends."  Shield, Merriam-Webster.com Dictionary, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/shield (last visited March 31, 2021).  Moreover, the government alleges that Mr. Klein "did forcibly assault, *resist, oppose impede, intimidate, and interfere with*" the riot shield.  Indictment, at 2 (ECF No. 15).  The government could have alleged that Mr. Klein forcibly assaulted a police officer only, but it did not.  Presumably because it could not.  Nor should the government be permitted to benefit from this obvious strategic choice.

process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at 11.

In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors:  (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(1)-(4).

Additionally, "[d]etention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress."  *Munchel*, at 17.  Rather, the government must "clearly identif[y]" an "articulable threat."  *Id.*  "Thus, a defendant's detention based on dangerous accords with due process *only insofar* as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses *a concrete, prospective threat to public safety.*"  *Id.* at 11.  This holding of the D.C. Circuit is consistent with the Supreme Court's acknowledgement in *Salerno* that while constitutional on its face, the Bail Reform Act could nevertheless be unconstitutionally applied.  *Salerno*, 481 U.S. at 745 n.3.  Mr. Klein's detention in this case is exactly the unconstitutional application of the Bail Reform Act contemplated by the Court in *Salerno*.  Where, as here, a defendant is detained based solely on the conduct they are alleged to have committed (and absent a charge giving rise to a presumption of detention), the failure of the government to "clearly articulate" a future threat to an individual or the community constitutes a deprivation of that defendant's due process rights under the Fifth Amendment of the

Constitution.  *See, e.g., Motamedi*, 767 F.2d at 1405 (The Fifth and Eighth Amendments'
prohibitions of deprivation of liberty without due process and of excessive bail require careful
review of pretrial detention orders to ensure that the statutory mandate has been respected.").

### i.  Nature and Circumstances of the Charged Offenses

Judge Howell has delineated several factors that she has considered in evaluating the
nature and circumstances of charged offenses as part of the government's request for detention in
Capitol violence cases.  *See* Mem. Op., *United States v. Chrestman*, No. 1:21-cr-00160-TJK, at
14-16 (D.D.C. Feb. 26, 2021).  The "differentiating factor[s]"  include:  (1) "whether a defendant
has been charged with felony or misdemeanor offenses;" (2) "any indication that a defendant
engaged in prior planning before arriving at the Capitol;" (3) whether a defendant is alleged to
have been equipped with a dangerous weapon "indicat[ing] at least some degree of preparation
for the attack and an expectation that the need to engage in violence against law enforcement or,
indeed, the Legislative branch, might arise;" (4) "[e]vidence of coordination with other
participants before, during, or after the riot"; (5) evidence that a "defendant . . . assumed either ra
formal or a de facto leadership role;" (6) "a defendant's words and movements during the riot"
including, but not limited to, whether a defendant (i) "injured, attempted to injure, or threatened
to injure others;" (ii) "actively threatened or confronted federal officials or law enforcement;"
and/or (iii) "promoted or celebrated efforts to disrupt the certification of the electoral vote count
during the riot, thereby encouraging others to engage in such conduct."  *Id.*

It is axiomatic that the Bail Reform Act does not contemplate detention based purely on
the nature of pending charges alone:  to do so would unconstitutionally controvert one's
presumption of innocence by requiring detention based solely on the allegations giving rise to the
need for a detention hearing and not the facts *and circumstances* requiring contemplation by the

plain language of the statute itself.  *See*, *e.g.*, 18 U.S.C. § 3142(j) ("Nothing in this section shall

be construed as modifying or limiting the presumption of innocence.").

Nevertheless, Judge Howell's delineation of factors, while not binding on this court's

determination, do reflect her participation in a number of detention hearings relating to the

violence at the Capitol on January 6.  And with respect to Mr. Klein, the government has not

proffered any evidence, let alone admissible evidence, that he "engaged in prior planning before

arriving at the Capitol" or "coordin[ated] with other participants before, during or after the riot;"

that he brought a dangerous weapon with him to the Capitol evincing "some degree of

preparation for the attack and an expectation that the need to engage in violence against law

enforcement;" or that he ever entered the Capitol or was otherwise present at the events of

January 6, except for the 30 minutes described by the government in their Complaint.

And while Mr. Klein has been charged with a felony, this one factor cannot, and should

not alone warrant his detention pending trial.  Moreover, although the government alleges Mr.

Klein was "calling back to the crowd behind him," the government does not allege that the

person depicted in the video in any way commanded authority or otherwise served in any

leadership role.  The shouts of many can be heard during the events of January 6 and while

condemnable, in the words of Judge Howell herself, "not all rioters charged with offenses

stemming from the January 6 attack will be held pending trial."  Mem. Op., *United States v.*

*Chrestman*, No. 1:21-cr-00160-TJK, at 13 (D.D.C. Feb. 26, 2021).

The government also proffers that Mr. Klein "engag[ed] in hand-to-hand violence against

police officers while wielding an apparently stolen police riot shield," Memo. in Support of

Pretrial Detention, at 5 (ECF No. 10), but the only evidence proffered of this incident is that Mr.

Klein "shoved a riot shield . . . towards the officers trying to stop the mob from gaining access to

the building [and] [i]n doing so, . . . pushed the riot shield in between the doors to the Capitol."
Complaint, at 6 (ECF No. 1).  To be sure, the allegation is serious, but does not depict "hand-to-hand" conduct or nor any legitimate belief that the person depicted actually assaulted an officer, as opposed to blocking the door.  Indeed, as the only party in possession of the body worn camera purportedly depicting the events described in the complaint, surely the government would have alleged some alleged physical contact between the person they assume is Mr. Klein and an officer.  Therefore, it cannot fairly be said that Mr. Klein is alleged to have either "injured, attempted to injure, or threatened to injure others;" or that he is alleged to have "actively threatened or confronted federal officials or law enforcement."  And the government has not proffered any evidence of Mr. Klein having "promoted or celebrated efforts to disrupt the certification of the electoral vote count."[12]  Mem. Op., *United States v. Chrestman*, No. 1:21-cr-00160-TJK, at 15 (D.D.C. Feb. 26, 2021).

    In summary, while the government passionately recounts the events of January 6 in its pretrial detention memorandum, the government also betrays its own bias by speculating as to Mr. Klein's motives, asserting that "[Mr.] Klein chose to unlawfully enter the Capitol Grounds on January 6, 2021, for the stated purpose of preventing Congress from completing its constitutional duty of certifying the results of a lawful election."  Mem. in Support of Pretrial Detention, at 8 (March 9, 2021) (ECF No. 10).  In reality, any suggestion of nefarious motive is contradicted by the government's own acknowledgement that the person alleged to be Mr. Klein is also captured on video *helping* officers at the Capitol.  *See* Complaint, at 13-14 (ECF No. 1).

---

[12] In its Detention Memorandum, the government alleges that Mr. Klein can heard yelling "we just want a fair election," but this statement, on its own, cannot credibly be said to "promot[e]" or "celebrate" an effort to stop the election certification.

### ii.   The Purported Weight of the Evidence.

In determining whether conditions of release can assure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *see also Motamedi*, 767 F.2d at 1408 ("It is apparent from the record below that the district court accorded great weight to the charges against [the defendant] and the Government's assertions of his guilt."). "[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Motamedi*, 767 F.2d at 1408.  "It is not the purpose of the bail system to punish an accused again for his past crimes, *or to punish him in advance for crimes he has not yet been shown to have committed*." *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969) (emphasis added).

> It is true of course, that [the predecessor to the current Bail Reform Act] requires the court to take into account 'the nature and circumstances of the offense charge [and] the weight of the evidence against the accused,' but the statute neither requires nor permits a pretrial determination that the defendant is guilty.  This is not merely a matter of the proprieties, though that is itself not unimportant for judicial actions.  If one bears in mind that one is examining only the evidence against the accused, for purposes of considering prospect of flight[,] [then, the only basis for detention], one is more likely to guard against the impermissible course of reaching some kind of partial determination of guild and beginning what is in substance a mandate of punishment.

*Alston*, 420 F.2d at 179-180.  In this case, the only party in possession of any "evidence" is the government.  Despite Mr. Klein's Rule 16 request, on March 14, 2021, more than two weeks prior to the date of filing, the government has yet to provide the defendant with *any* evidence separate from the grainy images included within the Complaint – much less any that purports to be "strong and compelling."  *See* Memo. in Support of Detention, at 9 (March 9, 2021) (ECF No. 10).

Despite the government's assertion, it also concedes, as it must, many significant flaws in the allegations against Mr. Klein.  For example, while the government relies heavily on the photograph and video-graphic evidence detailed in its complaint, *see* Complaint (March 3, 2021) (ECF No. 1), the photographic evidence, which has been included only in the Complaint and has yet to be provided to defense counsel, despite a request for the same on March 14, 2021, depicts an individual wearing a "Make America Great Again" ball cap amongst thousands who had previously attended a "Stop the Steal" rally organized by former President Trump.  Even a cursory review of the photograph and video-graphic evidence cited by the government reveals hundreds and possibly thousands of similar such hats.  Moreover, the government also acknowledges in its Complaint, but not in its Memorandum in Support of Pretrial Detention, that the individual they purport to be Mr. Klein is apparently captured wearing two *different* hats. *See* Complaint, at 12 (March 2, 2021) (ECF No. 1).

Finally, the government also fails to mention in its Memorandum in Support of Pretrial Detention that a majority of witnesses who attempt to identify the individual known as 136-AFO identify someone *other than* Mr. Klein.  In its initial complaint, however, the government acknowledges this weakness and further concedes that one witness identified someone other than Mr. Klein with certainty – Witness 3 is acknowledged to have described someone other than Mr. Klein as baring a "striking resemblance" to the individual depicted in 136-AFO.  Complaint, at 4 (March 2, 2021) (ECF No. 1).  Because the government has yet to disclose any evidence in this case, or otherwise provide Mr. Klein the opportunity to cross-examine any witnesses, we can only speculate as to why this individual's identification was discredited – that their cell phone failed to ping a cell phone tower at or near the Capitol Building certainly is not conclusive.  *Id.* In addition, the government relies upon an identification of Mr. Klein by a former colleague at

the Department of State, without providing any information as to the methods or procedures utilized in obtaining the identification. *See* Memo. in Support of Pretrial Detention, at 10 (March 9, 2021) (ECF No. 10).

The irony of the readily apparent weaknesses in the government's proof is exacerbated by the government's procedural approach in this and related matters. Although it filed its criminal complaint against Mr. Klein on March 2, 2021, resulting in his March 4, 2021 arrest and subsequent detention, the government did not file an indictment against Mr. Klein with the Court until March 19, 2021, the same day Mr. Klein was scheduled for a preliminary hearing at which time he would have had his first opportunity to explore the weaknesses articulated above. Weaknesses this Court is now precluded from relying upon in reaching a pretrial detention determination. Moreover, the government has yet to produce any discovery in this matter, despite Mr. Klein's request for the same on March 14, 2021. "No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of the Anglo-American jurisprudence." *Alston*, 420 F.2d at 179.

### iii.  History and Characteristics of the Defendant

In considering Mr. Klein's history and characteristics, the Court must "take into account the available information concerning" Klein's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Specifically, Mr. Klein has strong ties to the area in which he resides, having lived in the D.C. metropolitan area his entire life, is a devout catholic and regular parishioner at Saint Rita's in Alexandria, and has family in the area including his mother, step-mother, as well as his brother and sister-in-law and their young child. Mr. Klein also served as a political appointee in

the Trump Administration for nearly four years, resigning with the change in administration, and was actively seeking work (and was occasionally working) at the time of his arrest.  Mr. Klein is also marine who served honorably in the Iraq War.  Moreover, the government concedes in its pretrial detention memorandum that Mr. Klein's "criminal history is limited, and – at first blush – appears to favor release."  Mot. in Support of Pretrial Detention, at 11 (March 9, 2021) (ECF No. 10).

Rather than acknowledge Mr. Klein's compelling ties to his community, the government argues that Mr. Klein's "history" is that of an "oath-braker" who "abdicated his responsibilities to the country and the Constitution."  Memo. in Support of Pretrial Detention, at 11-12 (March 9, 2021) (ECF No. 10).  While provocative, the government's assertion does not address the "history and characteristics" of the defendant, but instead reiterates that because Mr. Klein is alleged to have participated in the events of January 6, his pretrial detention is accordingly warranted, which controverts the obligation of the Court and the due process rights of Mr. Klein.

### iv.  Danger to the Community

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release."  18 U.S.C. § 3142(g).  "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." *Taylor*, 289 F. Supp. 3d at 70.  Because this factor substantially overlaps with the ultimate question of whether any conditions of release "will reasonably assure . . . the safety of any other person and the community," 18 U.S.C. § 3142(e), it should bear heavily on the Court's analysis.  *See* Memorandum Opinion and Order, *United States v. Cua*, No. 21-107 (RDM) (March 10, 2021).

The government bears the ultimate burden of establishing that no condition or combination of conditions is sufficient to negate the risk of the accused's dangerousness by clear and convincing evidence.  18 U.S.C. § 3142(e)(1); *see also United States v. Bell*, 209 F. Supp. 3d 275, 277 (D.D.C. 2016) (*citing United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)). Clear and convincing evidence means proof that the defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger.  *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991).  Only when there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty.  *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

In passing the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, Congress hoped to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger *a person* may pose to others if released."  S. Rep. No. 98-225, at 3.

> The reference to safety of any person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.

S.Rep. No.98-225 at 12–13, reprinted in 1984 U.S. Code Cong. & Adm. News 3182, 3195–3196, *quoted in* 3B Wright & Miller, Fed. Prac. & Proc. § 766 (4th ed.).

To that end, in *United States* v. Salerno, 481 U.S. 739 (1987), the Supreme Court held that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment" and that a valid regulatory purpose of pretrial detention is to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released."  *Id.* at 742 (quotation omitted).  Yet, the

Court explicitly acknowledged the possibility of the Bail Reform Act *being applied* in a manner

constituting an unconstitutional violation of an accused's due process rights ensured by the Fifth

Amendment.  *See id.* at 745 n.3.

In that vein, the D.C. Circuit has now explicitly articulated the unique confluence of

events that gave rise to the violence at the Capitol on January 6 and has admonished this court

for:

> Fail[ing] to demonstrate that it considered the specific circumstances that made it
> possible, on January 6, for [those gathered] to threaten the peaceful transfer of
> power.  [Those gathered] had a unique opportunity to obstruct democracy on
> January 6 because of the electoral college vote tally taking place that day, and the
> concurrently scheduled rallies and protests.  Thus, [participants in the violence at
> the Capitol] were able to attempt to obstruct the electoral college vote by entering
> the Capitol together with a large group of people who had gathered at the Capitol
> in protest that day. . . .  [T]he presence of the group was critical to [the] ability to
> obstruct the vote and to cause danger to the community.

*Id.* at 19-20.  The D.C. Circuit went on to note that although the district court concluded the

defendants there were "a danger to 'act against Congress' in the future," it failed to "explain[]

how the [defendants] would be capable of doing so now that the specific circumstances of

January 6 have passed."  *Id.* at 19-20.

In ordering Mr. Klein detained pending trial, the magistrate judge concluded:  "That the

Capitol grounds are currently heavily fortified and prepared for future incursions reflects that

leaders have ascertained that a risk still exists for future violent conduct."  Order, at 11 (March

16, 2021) (ECF No. 11).  Put differently, the sole grounds upon which the Court relied in

concluding Mr. Klein presents "an identified and articulable threat to an individual or the

community" is the fact that he is alleged to have participated in the events of January 6.

In so doing, the court shifted "the Government's burden to prove to the judicial officer by

clear and convincing evidence that 'no condition or combination of conditions will reasonably

assure the safety of any person and the community."  *United States v. Watkins*, 940 F.3d 152,

159 (2d Cir. 2019). Absent an "articulable threat" of future acts against Congress by Mr. Klein now that the specific circumstances of January 6 have passed, the government has failed to meet its burden, by clear and convincing evidence, that Mr. Klein poses a danger to any individual or to the community and his detention is permitted neither by the Bail Reform Act, nor the due process clause of the Fifth Amendment to the Constitution.

Absent any specifically articulable threat posed by Mr. Klein to his community pretrial detention is unwarranted. Indeed, notably absent from the detention order is any reference to the fact that the government does not allege that Mr. Klein made any attempt to flee, but rather between January 7 and his arrest evidently lived his life normally – including working or seeking work, attending church, and otherwise living his life normally. The only reasonable inference to be drawn from the court's detention order is that to be released, Mr. Klein would have had to prove that he did not participate in the conduct he is now merely alleged to have committed.

### C. Conditions of Release Ensure that the Public's Safety Can be Reasonably Assured.

Even were this court to conclude that Mr. Klein presents an articulable threat to an individual or the community, it must nevertheless assess whether "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The condition or combination of conditions need not guarantee the safety of the community, to so require would "fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (internal citation omitted). Rather, courts cannot demand more than an "objectively reasonable assurance of community safety." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985), *quoted in Tortora*, 922 F.2d at 884.

Because the government has yet to articulate a specific threat to the community it is difficult, if not impossible, to understand how the panoply of release conditions, including GPS monitoring, available to the court would not assure the safety of the community.  Particularly concerning is the rationale of Magistrate Judge Faruqui in ordering Mr. Klein's detention:

> "It still appears that the security of the Capitol Building hangs in the balance.  The only reason there have been no additional attacks is because there has been a military defense put up around these buildings – short of an invading force.  This seems to indicate to me, including recently amid heightened, concerns that there continues to be a threat.  Given that case, there is not an inchoate danger, a real danger of violence."

Of course, this rationale for detention has now been rebuffed by the D.C. Circuit and, absent some specifically articulable threat posed by Mr. Klein, it is axiomatic that the safety of the community can reasonably be assured despite Mr. Klein's release.

## IV.   TOLLING THE SPEEDY TRIAL ACT WHILE ORDERING THE INDEFINITE DETENTION OF MR. KLEIN DENIES JUSTICE.

In addition to demanding Mr. Klein's pretrial detention, the government now seeks to vitiate Mr. Klein's constitutional right to a speedy trial.  Not only does the government fail to articulate a legitimate basis for why the ends of justice are served by granting the continuance it seeks, but the combination of insisting on Mr. Klein's pretrial detention while not being able afford Mr. Klein a speedy trial constitutes a violation of his due process rights

### A.  The Government is Not Entitled to Exclude Time Under the Speedy Trial Act.

Section 3161 of Title 18 of the United States Code requires that a trial commence within seventy (70) days from the filing date of an information or indictment, or from the date a defendant first appears before a judicial officer of the court in which the charge is pending, whichever is later.  18 U.S.C. § 3161(c)(1).  "A criminal defendant's right to a speedy trial is 'one of the most basic rights preserved by our Constitution."  *Klopfer v. North Carolina*, 386

U.S. 213, 226 (1967).  Congress chose to safeguard this important right through the rigid

procedural requirements of the Speedy Trial Act."  *United States v. Ammar*, 842 F.3d 1203,

1212-13 (2016).

The Speedy Trial Act excludes certain periods of time for purposes of computing the time

within which a trial must commence, including where the trial court makes a finding that the

ends of justice outweigh the defendant's and the public's interest in a speedy trial.  18 U.S.C. §

3161(h)(7)(A).  The government contends that "[t]he investigation and prosecution of the Capitol

Attack will likely be one of the largest in American History, both in terms of the number of

defendants prosecuted and the nature and volume of the evidence."  Mot. Continue, at 2 (March

25, 2021) (ECF No. 15).  That "[o]ver 300 individuals have been charged in connection with the

Capitol Attack" and that it "expects that at least one hundred additional individuals will be

charged."  *Id.*

The government goes on to describe the voluminous evidence it has collected or

anticipates collecting.  *Id.* at 3.  Yet, despite the hurdles the government anticipates facing in the

production of discovery in *this* case, the government managed to present evidence to a grand jury

just over two weeks after Mr. Klein was arrested in this matter.  *See* Arrest Warrant Return

(March 4, 2021) (ECF No. 6); Indictment (March 19, 2021) (ECF No. 12).  Yet, in *this* case the

government has yet to provide *any* discovery to the defendant.

It is noteworthy that the government submits that it is "in consultation with the Federal

Public Defender" to "develop[] a comprehensive plan for handling, tracking, processing,

reviewing and producing discovery in the Capitol Attack cases" and that this "plan will require

more time to develop and implement, including further consultation with the Federal Public

Defender."  *Id.* at 3-4.  Despite this purported "consultation," however, the Federal Public

Defender nevertheless opposes the government's exclusion request, noting that "[t]he government chose when to bring this prosecution, with the understand that each *individual* defendant has rights under the Speedy Trial Act," that "[t]wo months after it brought forth the initial prosecutions in this case, the government has yet to determine how it can deliver discovery," and that "[t]he government chose to prosecute [these cases] when it had no plan to [do so] within the restrictions of its discovery obligations."  Opp. Mot. Exclude, *United States v. Gerding*, No. 1:21-cr-000131-PLF, at 3-4 (D.D.C. March 16, 2021).  *But see* Mot. Exclude, at 3 (March 25, 2021) (ECF No. 15) ("The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.").

The government's request is also readily distinguishable from, for example, the District-wide Standing Order excluding time from Speedy Trial Act calculations in all criminal cases "that cannot be tried consistent with [] health and safety protocols and limitations."  Standing Order No. 21-10 (BAH) (Mar. 5, 2021); *see also* Order, *United States v. Talyor*, No. 18-001918, 2020 U.S. Dist. LEXIS 232741, at *23 (D.D.C. Dec. 10, 2020) ("[T]he realities of the present pandemic ensure that the ends of justice served by a continuance decidedly outweigh the interests of [the defendant] and the public in a speedy trial.").  Here, the delay is not caused by the unknown time before which we can gather safely to prosecute and defend criminal cases, but by the government's concession that it is overwhelmed by the volume of evidence in *this* case.

**B. Insisting on Mr. Klein's Detention Based Solely on the Allegations with which he is Charged while Simultaneously Denying his Right to a Speedy Trial Deprives Mr. Klein of his Due Process Rights Guaranteed by the Fifth Amendment to the Constitution.**

The government's request is especially unjust where, as here, it has insisted upon the pretrial detention of a defendant knowing that it knows not when Mr. Klein can reasonably anticipate to exercise his right to a trial by jury.  While Mr. Klein remains detained – innocent until proven otherwise – he is precluded, because of COVID-related precautions, from even meeting with his counsel to discuss his defense strategy and it remains unclear how the government intends to make the voluminous evidence it anticipates producing available to Mr. Klein for his review.  This inherent contradiction is exacerbated by the fact that the government, in seeking the exclusion of sixty (60) days from Mr. Klein's right to a speedy trial, is not agreeing to *any* deadline by which discovery must commence.

To be sure, the Supreme Court has acknowledged the legitimate regulatory goal of solving a pressing societal problem – curbing an increase in violent crime by defendants released pending trial – subject to the implementation of "extensive safeguards" intended to provide "procedural protection" to defendants.  *Salerno*, 481 U.S. at 752.  But the Court in *Salerno* also recognized that while constitutional on its face, the Bail Reform Act could nevertheless be unconstitutionally applied.  *Salerno*, 481 U.S. at 745 n.3.  The confluence of circumstances with which this Court is presented – a recipe of the government's making – is exactly the unconstitutional application of the Bail Reform Act contemplated by the Supreme Court in *Salerno*.  Where, as here, a defendant is detained based solely on the conduct they are alleged to have committed, the failure of the government to "clearly articulate" a future threat to an individual or the community combined with a request by the government to deprive the

defendant of their right to speedy trial under the Sixth Amendment constitutes a deprivation of that defendant's due process rights under the Fifth Amendment of the Constitution.

The government cannot have it both ways – insist on the detention of Mr. Klein based solely on the allegations with which he is charged while concomitantly refusing to provide *any* certainty regarding when Mr. Klein can expect to exonerate himself by a jury of his peers.

## CONCLUSION

Mr. Klein has now been detained nearly three weeks based solely on the government's allegation that he participated in the violence that occurred at the Capitol Building on January 6. Because the government was not statutorily entitled to a detention hearing in this case; because the government has failed to articulate a specific threat to the community posed by Mr. Klein or that no condition or combination of conditions of release would reasonably assure such safety; or because, in the alternative, detaining Mr. Klein while simultaneously depriving Mr. Klein the right to a Speedy Trial would violate his due process rights, the Court must Order Mr. Klein's release subject to any conditions the Court deems necessary to assure the safety of his community.

[SIGNATURE ON NEXT PAGE]

Dated: March 31, 2021                    Respectfully submitted,

                                         _____/s/ Stanley E. Woodward, Jr._____
                                         Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                         BRAND WOODWARD, ATTORNEYS AT LAW
                                         1808 Park Road NW
                                         Washington, DC  20010
                                         202-996-7447 (telephone)
                                         202-996-0113 (facsimile)
                                         Stanley@BrandWoodwardLaw.com

                                         Kristin L. McGough (D.C. Bar No. 991209)
                                         LAW OFFICE OF KRISTIN L. MCGOUGH
                                         400 Fifth Street, NW
                                         Suite 350
                                         Washington, DC  20001
                                         202-681-6410 (telephone)
                                         866-904-4117 (facsimile)
                                         kristin@kmcgoughlaw.com

                                         *Counsel for Defendant Federico Guillermo Klein*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | Criminal No. 1:21-MJ-00269-GMH-1 |
| v. ) | |
| ) | |
| **FEDERICO GUILLERMO KLEIN**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CERTIFICATE OF SERVICE

On March 31, 2021, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification of such filing to the following registered parties:

> Kimberley Charlene Nielsen
> Jocelyn Bond
> U.S. Attorney's Office
> 555 4th Street, Northwest
> Washington, District of Columbia  20532


> _____/s/ Stanley E. Woodward, Jr._____
> Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
> BRAND WOODWARD, ATTORNEYS AT LAW
> 1808 Park Road NW
> Washington, DC  20010
> 202-996-7447 (telephone)
> 202-996-0113 (facsimile)
> Stanley@BrandWoodwardLaw.com

> *Counsel for Defendant Federico Guillermo Klein*