**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21-cr-236-JDB** |
| | : | |
| **FEDERICO GUILLERMO KLEIN,** | : | |
| **also known as "Freddie Klein,"** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION IN PART TO DEFENDANT'S MOTION FOR RETURN OF PROPERTY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes in part the defendant's Motion for Return of Property, filed on July 12, 2021. The United States does not oppose the requested return of the defendant's Blackvue dashboard camera because the government has determined that it does not have evidentiary value in the pending criminal proceedings. However, because the United States has a right to retain relevant evidence during the pendency of criminal proceedings, the government opposes returning defendant Klein's iPhone SE, which is necessary to prove both the authenticity and admissibility of the contents of the defendant's phone at trial. To order the return of defendant Klein's phone at this juncture would thwart the United States' ability to admit relevant evidence at trial and undermine the government's ability to meet its heavy burden of proving that defendant Klein committed the charged crimes beyond a reasonable doubt. Further, the physical iPhone SE may have evidentiary value in the criminal proceedings of the numerous other defendants charged with violating federal law at the U.S. Capitol on January 6, 2021, and therefore may be necessary as evidence in related cases.

1

**Procedural Background**

On March 4, 2021, Federico Guillermo Klein (hereinafter "defendant Klein") was stopped by the Federal Bureau of Investigation (FBI) while driving in Falls Church, Virginia, seated in the driver's seat of a 2000 BMW 540i registered in his name.  Inside of the vehicle, a grey iPhone SE (IMEI# 353790083874205) was sitting on the passenger seat next to the defendant and was plugged into a charger with an auxiliary cable.  The iPhone SE was seized by the FBI in Falls Church, Virginia, along with a Blackvue dashboard camera.  Those items were later transported to Washington D.C.  Following the stop, the defendant was arrested pursuant to an extraditable warrant issued in the District of Columbia for offenses committed at the U.S. Capitol Building on January 6, 2021.

On March 19, 2021, a federal Grand Jury returned an eight-count indictment against the defendant, charging him with three felonies, including: (1) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) Civil Disorder, in violation of 18 U.S.C § 231(a)(3); and (3) Obstruction of an Official Proceeding (Aiding and Abetting), in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  He was also charged with five misdemeanors related to his alleged conduct at the U.S. Capitol.  Trial is scheduled for September of 2022, with a start date of either September 12, 2022, or September 19, 2022, to be determined at a later date.

Following the seizure of the defendant's iPhone SE on March 4, 2021, the United States sought and obtained a warrant on March 11, 2021, to search the contents of the phone.  Pursuant to the warrant, an FBI forensic analyst completed an electronic extraction of the phone using the software program Cellebrite, which extracted copies of data contained within the defendant's

2

phone in the form of a report.[1]   The Cellebrite extraction of the defendant's phone yielded approximately 84.6 gigabytes of data, which is the equivalent of tens of thousands of pages of material as presented in the Cellebrite report.  Following the extraction, the United States engaged a filter team to review the contents of the phone to ensure that the prosecution team would not view any privileged materials during the search.   After the filter team completed its review, the prosecution team began its review of the non-privileged and search warrant responsive contents of the defendant's phone via the Cellebrite extraction report and has identified relevant material that the United States intends to introduce as evidence at trial.  The identified evidence thus far includes location information on January 6, 2021, as well as messages exchanged by the defendant via the Signal application ("app") regarding his presence at the U.S. Capitol.

Prior to filing the instant motion, the defense requested the return of the defendant's iPhone SE.  Counsel for the United States advised that the phone could only be returned to the defendant if he agreed to a stipulation addressing the accuracy and admissibility of the digital images extracted from the physical phone.  Among other provisions, the proposed stipulation would have had the parties agree that the extracted images of the defendant's phone "are accurate duplicates of the Digital Media and were created using reliable methods" and are "admissible into evidence

---

[1]      According to the law enforcement officers who conducted the search of defendant Klein's phone, some of the data from the phone was not captured during the extraction.  Their rough estimate is that approximately 5% of the data on the phone was not transferred from the phone to the report.  This is not uncommon.  *See State v. Pratt*, 128 A.3d 883, 894 (Vt. 2015) ("As the trial court here noted, the fact that the Cellebrite software did not extract all the data from defendant's cell phone does not affect the admissibility of the testimony but instead goes to the weight of that testimony."); *United States v. Michalec*, 2021 WL 267668, at *6 n.13 (Air Force Ct. Crim. App. 2021) ("According to Special Agent KC, a [Cellebrite] UFED is an 'extraction electronic device that extracts cell phone data. It doesn't make a mirror image of [a phone], it just extracts all data that it can.' The agent noted that because every phone is different, the data that can be extracted depends on the phone. He testified, 'There's times you'll hook up a certain phone and it won't pull at all.... As far as what data it will pull[,] it will pull deleted files, not always[,] but for the most part.'")

to the same extent as the original" within the meaning of Federal Rule of Evidence 1003.  Under the proposed stipulation, the defendant would have retained his right to challenge the search warrant of the phone and to move to suppress images obtained through the warrant.  The defendant rejected the proposed stipulation and, instead, filed the instant motion in which he specifically "reserves the right to[] challenge the authentication of any records extracted from a cellular device and may also call a forensic expert to challenge the same" at trial.  Def's Mot. for Return of Prop., at 4, n.2 [ECF No. 40].  In order to preserve the ability to introduce the imaged contents of the defendant's phone at trial – which requires demonstrating the authenticity and admissibility of the images – the United States declined to return the defendant's phone during the pendency of the criminal case.

<u>Argument</u>

The United States opposes returning the defendant's iPhone SE during the pendency of criminal proceedings because the physical phone is necessary to prove both the authenticity and admissibility of the contents of the defendant's phone at trial.  To order the return of the defendant's phone at this juncture would thwart the United States' ability to admit essential evidence at trial and undermine the government's ability to meet its heavy burden of proving the defendant's guilt beyond a reasonable doubt.  Further, the physical iPhone SE may have evidentiary value in the criminal proceedings of the numerous other defendants charged with violating federal law at the U.S. Capitol on January 6, 2021, and therefore may be necessary as evidence in related cases.

The United States is entitled to retain lawfully seized property "pending exhaustion of its utility in criminal proceedings." *United States v. Brown*, 185 F. Supp. 3d 79, 82 (D.D.C. 2016)

(denying in part motion to return property where property was evidence in ongoing criminal prosecution), *citing Hubbard v. United States,* 650 F.2d 293, 303 (D.C. Cir. 1980);  *United States v. Farrell*, 606 F.2d 1341, 1347 (D.C. Cir. 1979) ("To summarize these cases, courts may rightfully refuse to return claimed property when…the property involved is subject to government retention pending termination of the trial.").  This right of retention for evidentiary purposes rests on the long-standing principle that the "government has an interest in solving crime," even where another party asserts a superior property interest.  *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 306 (1967); *see also Hubbard*, 650 F.2d at 303.

The ability of the United States to retain property is not indefinite, of course, and is limited to circumstances in which the property has evidentiary value in ongoing criminal proceedings, or where the government can assert another valid legal claim, such as the right to forfeiture.  *See United States v. Wilson*, 540 F.2d 1100, 1103-04 (D.C. Cir.1976).  As the D.C. Circuit has explained, "the district court has both the jurisdiction and the duty" to ensure the return "to the defendant [of] property seized from him in the investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence." *Id.* at 1101.  The district court's duty to return, however, presupposes that the property in question is no longer needed as evidence.

Rule 41(g) provides the procedural mechanism by which a defendant in a criminal proceeding may seek the return of property, providing that "[a] person aggrieved by…the deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g).  Such a motion, however, "must be filed in the district where the property was seized."[2] *Id.*  In

---

[2]     In this case, defendant Klein's iPhone SE was seized on March 4, 2021, in Falls Church, VA, at the time of

circumstances where the court grants a motion to return property, the court "may impose reasonable conditions to protect access to the property and its use in later proceedings." *Id.*

The defendant's physical iPhone is necessary evidence in the instant criminal case and the United States has a right to retain the phone for the duration of the criminal proceedings. As the Court is aware, the defendant has been indicted on multiple felony and misdemeanor charges related to his role in attempting to breach the U.S. Capitol on January 6, 2021. He is currently scheduled for trial in September of 2022.

To prove its case at trial, the United States will be required to demonstrate, among other elements, that the defendant was present at the U.S. Capitol on January 6, 2021, that he engaged in the unlawful conduct alleged in the indictment, and that he had the requisite knowledge and intent to engage in that conduct. The United States' burden is a heavy one; the government must unanimously convince twelve citizens of the District of Columbia that the defendant is guilty beyond a reasonable doubt. To meet that heavy burden, the United States intends to introduce at trial evidence of the contents of the defendant's phone, as extracted by the Cellebrite program, including location information and personal messages. The location information and messages identified in Klein's phone are direct evidence of the defendant's presence at the U.S. Capitol on January 6, 2021, as well as of his knowledge and intent on that date. To ensure the admissibility of the contents of the defendant's phone, however, the United States must also prove that the

---

Klein's arrest. Thus, under Fed. R. Crim. P. 41(g), the appropriate district in which to file a motion for the return of the iPhone SE would be the Eastern District of Virginia rather than the District of Columbia. Nevertheless, the United States notes that the criminal case is pending in the District of Columbia and Klein's iPhone SE is being retained as evidence in the District of Columbia criminal case.

6

contents are accurate and authentic: the defendant's physical iPhone SE is necessary for this process.

In general, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Ev. 901(a).  Further, where a duplicate is offered as evidence, that duplicate is "admissible to the same extent as the original unless a genuine question is raised about the original authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Ev. 1003.[3]  Authenticity itself rests on the ability to establish an unbroken chain-of-custody for evidence to show that the item has not been altered or tampered with prior to its introduction in court.  In the context of admitting the contents of the defendant's phone, the rules require the United States to prove not only the existence of the stand-alone content contained in the Cellebrite image, but also that the content was extracted from a specific iPhone SE, and that the specific phone in question was actually used by the defendant.  Without the ability to connect the phone contents directly to defendant Klein, the stand-alone phone contents would be largely irrelevant. The best method to both admit the phone's contents and to convince a jury of the value of that evidence is to present testimony of the individual(s) who seized the phone, the physical phone, the Cellebrite image, the testimony of the individual who forensically imaged the phone, and the testimony of any other individual in the chain-of-custody.  Failure to provide convincing evidence that the Cellebrite image of the phone is accurate and did, in fact, come from the specific iPhone SE used by Klein, leaves the United States open to the jury dismissing the value of that evidence

---

[3]     As noted above the report in question is not an exact duplicate, as Cellebrite was not able to fully extract all of the data from the defendant's phone.

when making a determination of the defendant's guilt or innocence.[4]  This is especially true where the defense has specifically indicated that it may "challenge the authentication of any records extracted from a cellular device and may also call a forensic expert to challenge the same."  Def's Mot., at 4, n.2 [ECF No. 40].

It is also important to note that some of the evidence that has been discovered in the defendant's phone is not available to the government through other means.  For example, the United States has identified text messages sent by the defendant through the Signal app, in which Klein identifies himself in a video at the Capitol.  Notably, Signal is a "state-of-the-art end-to-end encryption" app that "keeps your conversations secure."  *See*  Why Use Signal, https://signal.org/en/ (last visited Jul 26, 2021).  Signal advertises that even they cannot read messages or listen to calls, "and no one else can either." *Id.*  As Signal itself says, "Signal doesn't have access to your messages; your chat list; your groups; your contacts; your stickers; your profile name or avatar; or even the GIFs you search for." *See* https://signal.org/bigbrother/central-california-grand-jury/ (last visited Jul 26, 2021)  Indeed, Signal has specifically asserted that "the broad set of personal information that is typically easy to retrieve in other apps simply doesn't exist on Signal's servers." *Id.*  This includes address of the users, their correspondence, and the name associated with each account. *Id.*  Indeed, according to Signal, the only information that it

---

[4]     These difficulties are laid out in detail in *United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) (en banc):

> Finally, because of the complexity of the data thereon and the manner in which it is stored, the nature of digital storage presents potential challenges to parties seeking to preserve digital evidence, authenticate it at trial, and establish its integrity for a fact-finder — challenges that materially differ from those in the paper file context. First, the extraction of specific data files to some other medium can alter, omit, or even destroy portions of the information contained in the original storage medium. Preservation of the original medium or a complete mirror may therefore be necessary in order to safeguard the integrity of evidence that has been lawfully obtained or to authenticate it at trial.

maintains is the timestamps for when each account was created and the date that each account last connected to the Signal service. *Id.* Thus, the messages sent by the defendant via the Signal app are *only* available to the government through the defendant's phone and the Cellebrite extraction of that phone.

Relying on *United States v. Durham,* the defendant contends that his physical phone is not necessary for the purpose of introducing the contents of his phone as evidence. 902 F.3d 1180 (10th Cir. 2018). According to the defendant, *Durham* provided a "detailed procedural overview of the process of authentication of media obtained from a search of a phone that had been returned to the witness who provided it." Def. Mot., at 4 [ECF No. 40] (emphasis omitted). This overstates the applicability of *Durham* to the instant matter.

In *Durham*, the Tenth Circuit found that the district court did not abuse its discretion in admitting inculpatory cell phone videos that had been recorded on the phone of a witness in the case. There, although the physical phone had been returned to the witness, the government sought to introduce the videos that had been recorded on the phone. At trial, the witness who had recorded the videos testified that the videos accurately reflected her memory on the date she recorded them and that she never "manipulated, changed, or edited the footage in any way." *Id.* at 1230-32. The district court found that the testimony of the witness, even without the physical phone, provided a sufficient foundation to admit the recorded videos.

In the first instance, the Tenth Circuit's holding in *Durham* is not binding on District of Columbia courts and may or may not be persuasive to this Court's analysis of the admissibility of evidence in defendant Klein's case. Furthermore, the admissibility of the proffered cell phone videos in *Durham* was heavily litigated and was not a forgone conclusion prior to trial. Most

significantly, the United States in that case was able to authenticate and admit the videos primarily through the testimony of the witness who recorded them.  In contrast to the present case, the government there was able to call the owner of the phone to testify and to elicit testimony about the circumstances in which she recorded and preserved the videos.  The United States does not have that option in this case.  The government cannot compel the defendant to testify against himself in its case-in-chief and simply does not have the option of calling the person with most knowledge of the phone and its contents – defendant Klein – to testify at trial.[5]  Thus, the analysis in *Durham*, which does not govern the law of admissibility in this jurisdiction, is not applicable to the question now before the Court.

Of course, in circumstances were a defendant voluntarily stipulates to the authenticity and admissibility of evidence, the United States may be able to limit the foundational testimony and physical evidence needed to admit direct evidence of a crime and to also convince the jury of the value of that evidence.  Where the defendant agrees that evidence is what the government claims it is, there is little need for the United States to walk the court or the jury through the sometimes tedious step-by-step journey that the evidence made before trial.

Here, in an effort to facilitate the expeditious return of Mr. Klein's phone, the government has been and remains willing to return this evidentiary item if the defense enters into an evidentiary stipulation.  However, the defendant has declined to stipulate to the authenticity or admissibility of the phone contents and has expressly reserved his right to "challenge the authentication of any records extracted from a cellular device and may also call a forensic expert to challenge the same."

---

[5]     Nor will the government likely have the ability to call the defendant as an authentication witness at any of the other January 6/Capitol riot trials where the phone may be relevant.  The defendant's Fifth Amendment right against self-incrimination will prevent the government from calling him as a witness through his own conviction and sentencing, and potentially any appellate review.

Def.'s Mot. at 4, n.2 [ECF No. 40].  The defendant's choice to reserve his right to challenge the authenticity of the defendant's phone records will require the United States to meet that challenge at trial.  While the defendant has not detailed how he may challenge the authentication, the United States anticipates that he may seek to undermine the connection between Klein and the phone seized in Klein's car on March 4, 2021, to undercut the accuracy with which that phone was searched, or may allege tampering or alteration of the phone and its contents during the pre-trial process.  The United States must be able to introduce all evidence, including the physical phone, showing that the phone itself has never been tampered with or altered, that the phone came from Klein's car, and was properly stored, transported, and searched at all stages of the pre-trial process. Forcing the United States to forfeit physical custody of relevant evidence during the pendency of criminal proceedings will effectively prevent the United States authenticating and admitting evidence that the defendant has already expressly indicated that he intends to challenge.  Thus, just as the defense is not required to enter a stipulation, the government should not be forced to present its case without its best evidence.  It is for this reason that courts routinely deny defense motions for the return of physical electronic items where the data has already been extracted and/or duplicated.  *See e.g. United States v. Cano*, 222 F. Supp. 3d 876, 883 (S.D. Cal. 2016) ("Defendant argues that because the government has already seized the data from his phone, it no longer needs the physical phone. Nevertheless, the cell phone serves an evidentiary purpose as the case remains open and it was seized as an alleged instrumentality of the charged crime."); *United States v. Edwards*, 2020 U.S. Dist. LEXIS 154851, at *7-8 (D. Kan. 2020) ("As for the remaining originals of Defendants' papers, electronics, and inventory, the Government argues that, absent a stipulation from Defendants that will address foundational issues for the items' eventual use at future hearings

11

and trial, prosecuting its case requires continued possession. . . . All things considered, the Government has the better argument. . . . (1) the papers, electronics, and inventory remain evidence still 'needed in aid of a criminal prosecution'"); *United States v. Lawrence*, 2011 U.S. Dist. LEXIS 118697, at *3 (W.D. Okla. 2011): "From the Court's familiarity with the facts and evidence in the case, the Court easily concludes that Defendant's lap top computer and cell phone were necessary evidence at trial, and should be preserved by the government pending appeal. . . . Thus, the Court will grant Defendant's Motion and direct the government to release the seized property, except the lap top computer and cell phone, to Defendant's designee.")

The defendant also relies on several cases in support of his motion, including *Brown*, *Wilson*, and *In re Sealed Case*. These cases, however, do not provide support for returning property that is evidence in an ongoing criminal proceeding. Indeed, each of these cases presupposes the government's right to retain evidence during the pendency of criminal proceedings. Most relevant here, the D.C. District Court in *Brown* denied the defendant's request to return property that the government argued was necessary for the prosecution of a co-defendant. 185 F. Supp. 3d 79, 86 (D.D.C. 2016) ("The defendant concedes, as he must, that property may be retained by the government for evidentiary use during a criminal proceeding.").[6] Thus, not only does *Brown* fail to support the defendant's argument, it provides significant support for the argument that the United States is properly retaining the defendant's iPhone SE in anticipation of its use at his own trial as well as other January 6/Capitol riot trials.

---

[6]   The court also denied the return of certain property that had been administratively forfeited and denied as moot the defendant's motion where property had already been returned. *Id.* at 82-86.

The defendant's reliance on *Wilson* similarly falls short.  There, the D.C. Circuit ordered that the defendant's property be returned, but under circumstances significantly dissimilar and easily distinguishable from those in the instant matter. 540 F.2d 1100 (D.C. Cir. 1976). Significantly, in *Wilson*, the defendant had already pled guilty and been sentenced when he moved for the return of currency seized from his apartment.  *Id.* at 1101-02.  The criminal proceedings had fully concluded, thereby eliminating any potential evidentiary basis for retaining the funds. Since the government was also unable to demonstrate that the funds were either contraband or subject to forfeiture, the Court remanded the case to the District Court to order that the funds be returned to the defendant.  *Id*. at 1103-04.  Even so, the Circuit implicitly confirmed the right to retain property needed for evidentiary purposes.  *See id.* at 1103-04 ("We hold that the district court once its need for property has terminated, has both the jurisdiction and the duty to return the contested property…).

Neither does *In Re Sealed Case* support the defendant's request for the return of his iPhone SE prior to trial.  There, the D.C. Circuit dismissed the case for lack of appellate jurisdiction where the District Court denied a motion for return of property in an ongoing criminal prosecution.  716 F.3d 603, 607-08 (D.C. Cir. 2013).  After scrutinizing whether the defendant's Rule 41(g) motion had been brought solely for the return of property, the D.C. Circuit suggested that the underlying reason for the motion had been for strategic gain in a future hearing or trial.  The Court found that the motion for return of property was not independent of the ongoing criminal case and, therefore, was not subject to collateral appeal.  *Id.* at 610-11.

The defendant does not provide any support for his contention that evidence in an ongoing criminal proceeding should be released prior to trial and the United States opposes returning the

13

defendant's iPhone SE at this time.  The United States has a limited right to retain evidence for the duration of criminal proceedings and, absent an acceptable stipulation, releasing defendant Klein's iPhone SE prior to trial would deprive the United States of the ability to authenticate and admit relevant evidence of the crimes charged.

## Conclusion

WHEREFORE, the United States respectfully requests that the Court deny the defendant's motion to return his iPhone SE for the duration of criminal proceedings in the case of defendant Klein and related cases involving other Capitol breach defendants.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Jocelyn Bond*
JOCELYN BOND
KIMBERLEY C. NIELSEN
Assistant United States Attorneys
D.C. Bar No. 1008904
555 4th Street, N.W.
Washington, D.C. 20530
202-809-0793
Jocelyn.Bond@usdoj.gov
Kimberley.Nielsen@usdoj.gov

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 28, 2021, I caused a copy of the foregoing opposition to be served on counsel of record via electronic filing.

*/s/ Jocelyn Bond*
JOCELYN BOND
Assistant United States Attorney